IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

        v.

ERICK RAHUMID HOBBS

:
:
:   Criminal No. DKC 18-322
:   Rel. Civil Action DKC 22-1881
:
:

**MEMORANDUM OPINION**

Erick Rahumid Hobbs ("Mr. Hobbs" or "Petitioner") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion" or "motion to vacate") on July 22, 2022.[1] (ECF No. 95).[2] After having been granted an extension of time to file a response, (ECF No. 99), the Government filed a response in opposition, (ECF No. 101), and Mr. Hobbs filed a reply, (ECF No. 102). Mr. Hobbs also filed a motion for grand jury transcripts at no cost, (ECF No. 97), a motion for default judgment, (ECF No.

---

[1] Mr. Hobbs submitted the motion to prison officials on July 22, 2022, the motion was mailed by prison officials on July 25, 2022, was received by the court on July 28, 2022, and was docketed by the Clerk on July 29, 2022. Under the "mailbox rule," a *pro se* litigant who is incarcerated is deemed to have filed a pleading or motion with the court upon delivery of the motion to prison officials. *See Houston v. Lack,* 487 U.S. 266, 275-76 (1988); *Lewis v. Richmond City Police Dep't,* 947 F.2d 733, 734-35 (4th Cir. 1991) (extending *Lack* to 42 U.S.C. § 1983 claims); *United States v. Dorsey,* 988 F.Supp. 917, 919-20 (D.Md. 1998) (extending *Lack* and *Lewis* to § 2255 petitions). Thus, Mr. Hobbs filed his motion on July 22, 2022. (ECF No. 95).

[2] All references to the record pertain to the criminal case.

100), a letter requesting the court to modify his presentence report, (ECF No. 103), a motion for a transcript of the oral argument before the United States Court of Appeals for the Fourth Circuit, (ECF No. 104), a motion for *in forma pauperis* status, (ECF No. 105), and a motion to supplement his § 2255 motion, (ECF No. 107).   The Government filed a Response to the motion to supplement, (ECF No. 110), and Mr. Hobbs filed a reply, (ECF No. 111).   For the reasons discussed below, the court will deny Mr. Hobbs' motions.

## I.   Background

Erick Rahumid Hobbs was convicted of possession of a firearm and ammunition by a prohibited person after a jury trial.   He was sentenced to 198 months in prison, followed by five years of supervised release.   The judgment was affirmed by the Fourth Circuit.   That opinion dealt primarily with a pre-trial suppression issue and the facts developed at the suppression hearing were recounted, in the light most favorable to the Government, as follows:

> This case arose from allegations of domestic violence reported to Baltimore County police by Hobbs' former girlfriend, Jaquanna Foreman, shortly after 7:00 p.m. on February 3, 2018.   At the time, Foreman was home with her seven-year-old daughter.   Foreman told the responding officers that Hobbs had come to the back of her home, brandished a semi-automatic

handgun, and used the gun to break a window in
the home.  He then forcibly entered the home
and removed a television [he had given to
Foreman's daughter].  Before leaving the home
with the television, Hobbs threatened to kill
Foreman, her daughter, and other family
members, and stated that if she contacted the
police, he also would kill any responding
officers.

The officers escorted Foreman and her
daughter to the police station, where Foreman
provided additional details about Hobbs,
including aliases, dates of birth, information
about his vehicle and his social media usage,
and a cell phone number.  She also stated that
Hobbs had a criminal record.  Foreman informed
Detective Michael Nesbitt that, in addition to
the handgun Hobbs displayed that night, she
previously had seen him armed with assault
rifles and that he was "obsessed with
firearms."  Nesbitt verified that Hobbs had a
violent criminal history, including
convictions for robbery and attempted murder.

*United States v. Hobbs*, 24 F.4th 965, 967–68 (4th Cir. 2022)

(footnote omitted).  After obtaining information on an exigent

basis from Mr. Hobbs' cell phone provider, police located him in

his vehicle:

About six hours after the domestic
incident, a team of officers attempted to
effect a traffic stop of Hobbs' vehicle.
Hobbs tried to flee from the officers until
his car eventually collided with a parked
vehicle.  The officers placed Hobbs under
arrest and recovered a loaded [Ruger P89 9 mm
caliber pistol] on the ground between the
driver-side door of his car and the curb.
Later that night, Detective Nesbitt secured a
search warrant for Hobbs' car, and two days

> later obtained a search warrant for the same
> cell phone information obtained earlier
> pursuant to the "exigent form." The police
> also executed a separate search warrant for
> Hobbs' residence and seized 65 rounds of
> ammunition from his home.

*Id*. at 968. Trial testimony largely mirrored that presented at the motions hearing.

On recorded jail calls after his arrest, Mr. Hobbs requested that his son and roommate communicate with Ms. Foreman in an effort to get her not to pursue charges and suggested Facebook as a means by which to contact her. After Ms. Foreman received a message via Facebook from Mr. Hobbs' roommate, law enforcement relocated Ms. Foreman and her daughter for their safety.

Mr. Hobbs was convicted of violating 18 U.S.C. § 924(e) and found to be an Armed Career Criminal based on a conviction for attempted second-degree murder and two convictions for armed bank robbery. He was sentenced on May 30, 2019, to 198 months in prison followed by five years' supervised release. (ECF No. 71). He noted an appeal to the Fourth Circuit challenging the denial of his suppression motion and, in a supplement, asserting that he was entitled to relief under *Rehaif v. United States*, 588 U.S. 225 (2019). The Fourth Circuit affirmed his conviction. (ECF No. 90). The mandate issued March 10, 2022. (ECF No. 94).

Mr. Hobbs filed this § 2255 motion on July 22, 2022. (ECF No. 95). The court ordered the Government to respond within sixty days of the Order and allowed Mr. Hobbs twenty-eight days from the date of the Government's response to file a reply. (ECF No. 96). The Government requested, and received, permission to file its response on or before October 28, 2022. (ECF No. 99). The Government filed its response in opposition on October 31, 2022. (ECF No. 101). Mr. Hobbs filed a motion for default judgment before the Government filed its response,[3] and then a reply. (ECF Nos. 100, 102).

Mr. Hobbs also filed a letter in June 2023, requesting that the court modify his presentence report, (ECF No. 103), a motion for a transcript of the oral argument before the Fourth Circuit at no charge, (ECF No. 104), a motion for *in forma pauperis* status, (ECF No. 105), and a motion to supplement his § 2255 motion, (ECF No. 107).

---

[3] The Government filed a response, albeit late. The brief delay is unlikely to have caused substantial prejudice, if any, to Mr. Hobbs. Not only does the Fourth Circuit have a "strong policy" that "defaults be avoided" and that cases "be disposed of on their merits," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citation modified), but defaults against the Government are only proper "if the claimant establishes a claim or right to relief by evidence that satisfies the court," Fed.R.Civ.P. 55(d). The motion for entry of default will be denied.

## II. Standard of Review

To be eligible for relief under 28 U.S.C. § 2255, Mr. Hobbs must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A *pro se* movant is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the 28 U.S.C. § 2255 motion, along with the files and records of the case, conclusively show that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

An issue may only be raised in a motion to vacate pursuant to 28 U.S.C. § 2255 if it has not been procedurally defaulted. One way a claim is procedurally defaulted is if it could have been raised on direct appeal and was not. The general rule is that "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982; *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)). Claims of

6

ineffective representation by counsel do not, ordinarily, have to be brought on direct appeal and, thus, may be raised for the first time on collateral review. *Id.* For those claims that are defaulted, "[t]he Supreme Court has recognized an equitable exception to the bar . . . when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *Dretke v. Haley*, 541 U.S. 386, 393 (2004)). To demonstrate cause, the petitioner must show a reason for a procedural default based "on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The petitioner must also demonstrate that he will suffer "actual prejudice" if his claim is not reviewed. *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Pursuant to 28 U.S.C. § 2255(b), an evidentiary hearing is appropriate where a petitioner "has pled facts that, if established, entitle him to relief, and there is a material dispute regarding those facts." *Jones v. United States*, No. 14-cr-0176-DKC, 2018 WL 1069438, at *1 (D.Md. Feb. 27, 2018) (quoting *Higgs v. United States*, No. 98-cr-3180-PJM, 2010 WL 1875760, at *63

(D.Md. Apr. 6, 2010)); *accord United States v. Yearwood*, 863 F.2d
6, 7 (4th Cir. 1988), *abrogated on other grounds by*, *Padilla v.
Kentucky*, 559 U.S. 356 (2010). "To warrant a hearing on an
ineffective assistance of counsel claim, the [petitioner] need
establish only that he has a plausible claim of ineffective
assistance of counsel[.]" *Jones*, 2018 WL 1069438, at *3 (quoting
*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). The
question of whether an evidentiary hearing is necessary is "left
to the common sense and sound discretion of the district judge."
*West v. United States*, No. 13-cr-0558-DKC, 2018 WL 529619, at *4
(D.Md. Jan. 24, 2018) (quoting *Raines v. United States*, 423 F.2d
526, 531 (4th Cir. 1970)). "A hearing is generally 'required when
a movant presents a colorable Sixth Amendment claim showing
disputed material facts and a credibility determination is
necessary to resolve this issue.'" *United States v. Smith*, No.
12-cr-0528-ELH, 2015 WL 4509955, at *1 (D.Md. July 24, 2015)
(quoting *United States v. Robertson*, 219 F.App'x 286, 286 (4th Cir.
2007)); *see United States v. Ray*, 547 F.App'x 343, 345 (4th Cir.
2013) ("An evidentiary hearing in open court is required when a
movant presents a colorable Sixth Amendment claim showing disputed
facts beyond the record or when a credibility determination is

necessary in order to resolve the issue." (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000))).

## III.  Analysis

### A.    Ineffective Assistance of Counsel

### 1.    Standard of Review

To establish ineffective assistance of counsel, Mr. Hobbs must show that his attorney's performance "fell below an objective standard of reasonableness" and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Under the performance prong, a petitioner "must show that counsel's performance was deficient." *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689; *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). The alleged deficient performance must be objectively unreasonable and "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The court must "evaluate the conduct [at issue] from counsel's perspective at the time" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  Under the prejudice prong, a petitioner must show that the deficient performance prejudiced

9

the defense and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687, 694. Finally, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

The "right to effective assistance of counsel extends to require such assistance on direct appeal." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (quoting *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc)). "Effective assistance of appellate counsel 'does not require the presentation of all issues on appeal that may have merit.'" *Id.* at 828–29 (quoting *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008)). Instead, the court presumes that appellate counsel "decided which issues were most likely to afford relief on appeal." *Id.* at 828 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented" should the court find a petitioner's appellate counsel ineffective for failing to raise those claims. *Id.* at 829 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

**2.    Petitioner's Claims**

Mr. Hobbs asserts that his attorney was ineffective by:

> a.    Failing to move for a "*Franks* hearing"[4] because the affidavits of Detective Michael Nesbitt and Officer Bryan Dixon contained false statements;
>
> b.    Failing to confront Ms. Foreman with police precinct interview evidence that contradicted her trial testimony; and
>
> c.    Failing to object, challenge, or preserve the argument of a duplicitous indictment at trial and on appeal.

**a.    Affidavits of Detective Nesbitt and Officer Dixon**

Mr. Hobbs states that he discussed and highlighted discrepancies in the affidavit of Detective Nesbitt supporting the search warrant for his home and the affidavit of Officer Dixon supporting the issuance of the arrest warrant with retained trial counsel and asked him to request a "*Franks* hearing" to address those issues. However, his attorney declined.

Mr. Hobbs states that Officers Dixon and Flanary interviewed the victim, Ms. Foreman, outside of her residence. Based on this interview, Officer Dixon applied for, and obtained, an arrest

---

[4]    *Franks v. Delaware*, 438 U.S. 154 (1978).

warrant for Mr. Hobbs.  He asserts that the affidavit supporting the request for the arrest warrant omitted Ms. Foreman's claim that Mr. Hobbs was in possession of an AK-47 rifle, that the television belonged to Mr. Hobbs, and misstated the way in which Mr. Hobbs entered Ms. Foreman's home.  Additionally, the firearm described in Officer Dixon's affidavit does not match the description of the firearm provided by Ms. Foreman in the 911 call. Mr. Hobbs asserts that Ms. Foreman's claim that he was armed with a black handgun and that an AK-47 assault rifle may be in his car was highly improbable and should cause a reasonable officer suspicion and to question the inconsistency of her allegations and credibility.

Mr. Hobbs contends that Detective Nesbitt's affidavit for the search warrant contains a deliberately false statement, i.e., that Mr. Hobbs dropped the handgun.  Mr. Hobbs notes that Detective Nesbitt did not participate in his arrest and thus, could not make this statement under oath.  Further, he asserts that the statements of the officers on the scene do not indicate that he dropped the handgun and thus that Detective Nesbitt inferred that he dropped the handgun.  Mr. Hobbs also contends that it was never proven that he was in possession of a handgun.

Mr. Hobbs argues that the affidavits contain "omissions, misrepresentations, and false statements" because some of Ms. Foreman's claims were omitted from Officer Dixon's affidavit and Detective Nesbitt was not present for his arrest and so could not attest that he dropped the firearm. He also contends that had the affidavits supporting the arrest warrant been accurate, the court would not have authorized the search warrant and cell phone location order. Additionally, had counsel moved for a *Franks* hearing, as Mr. Hobbs requested his attorney to do, the court would have agreed that an evidentiary hearing was warranted and the trial would have produced a different outcome.

The Government argues that Mr. Hobbs cannot show any actionable ineffective assistance for a variety of reasons. With regard to the arrest warrant, it argues that the government gained nothing of value by virtue of having the warrant. It asserts that any *Franks* motion for the arrest warrant would have failed because officers needed no warrant to make the arrest. In similar fashion, the Government argues that Detective Nesbitt's statement in his request for a warrant to search Mr. Hobbs' home, specifically that Mr. Hobbs dropped the firearm when exiting his vehicle, was unnecessary to secure the search warrant. Law enforcement had ample support for the search warrant without that statement. Other

key facts on the search warrant application included how Mr. Hobbs had taken the television forcibly while armed with a handgun, the jail call recording admitting he possessed the firearm and confirming Mr. Hobbs' address, and why they thought evidence may be found at his home.

This claim of ineffective representation fails.

The Fourth Circuit has recently recapped the law in this area:

> "[A]n accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). A "narrow exception" is made, however, for affidavits containing material mis-information. *Id.* In this setting, we suppress evidence obtained by a warrant if the defendant establishes "by a preponderance of the evidence" that, sans the "false material" caused by the affiant's "perjury or reckless disregard," the affidavit would have been "insufficient to establish probable cause." *Franks*, 438 U.S. at 156[].

*United States v. Glass*, No. 24-4193, --- F.4th ---, 2025 WL 3455396, at *4 (4th Cir. Dec. 2, 2025). Furthermore:

> This exception covers lies by omission, too. That is, if an affiant "omitted material facts that when included would defeat a probable cause showing," and if "the omission was designed to mislead or was made with reckless disregard of whether it would mislead," then the exclusionary rule applies. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). At the same time, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the

14

> course of an investigation." *United States v.*
> *Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).
> Consequently, omission-based attacks to
> affidavits trigger "an even higher evidentiary
> burden" than challenges based on false
> disclosures. *United States v. Moody*, 931 F.3d
> 366, 374 (4th Cir. 2019) (citing *Tate*, 524 F.3d
> at 454–55).

*Id.*

A trial court is not required to hold a full-fledged hearing

every time material misinformation is alleged. Instead, to merit

the conduct of a *Franks* hearing, the defendant must show much more

than Petitioner attempts here:

> To obtain a *Franks* hearing, a defendant
> must make a "substantial preliminary showing"
> to overcome the "presumption of validity with
> respect to the affidavit supporting the search
> warrant." *Moody*, 931 F.3d at 370 (citations
> and quotation marks omitted); *see also Franks*,
> 438 U.S. at 171[] (defendant's "attack must be
> more than conclusory and must be supported by
> more than a mere desire to cross-examine").
> When a defendant relies on an omission, this
> heavy burden is even harder to meet. *Tate*,
> 524 F.3d at 454–55. In that situation, a
> defendant must provide a substantial
> preliminary showing that (1) law enforcement
> made an omission; (2) law enforcement made the
> omission "knowingly and intentionally, or with
> reckless disregard for the truth," and (3) the
> inclusion of the omitted evidence in the
> affidavit would have defeated its probable
> cause. *Colkley*, 899 F.2d at 300–01. If the
> district court finds that a defendant has made
> this threshold showing, it must hold a *Franks*
> hearing to develop evidence on the affidavit's
> veracity. *Id.* at 301. If after the hearing
> the defendant establishes "perjury or reckless

15

> disregard" by a preponderance of the evidence
> and shows that the inclusion of the omitted
> evidence would defeat the probable cause in
> the affidavit, "the search warrant must be
> voided and the fruits of the search excluded."
> *Franks*, 438 U.S. at 156[]; *see also Colkley*,
> 899 F.2d at 300–01.

*United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (footnote

omitted).

The omission of some of Ms. Foreman's allegations from Officer

Dixon's affidavit and the fact that Detective Nesbitt was not on

scene when Mr. Hobbs was arrested and thereby could not personally

attest that he dropped the firearm after exiting his car do not

qualify.  First, as noted by the Government, the officers did not

need the arrest warrant to arrest him in public and could have

arrested him without a warrant based on probable cause.  The

Government would have argued inevitable discovery, in the event

there was a serious challenge to the warrant.  Second, the items

that Mr. Hobbs sees as material omissions have not been shown to

be true or material.  He claims that the affiant should have

included Ms. Foreman's claim that he was in possession of an AK-

47 rifle.  The somewhat convoluted logic is that, had the officer

pressed Ms. Foreman, he would have learned that she had not

actually seen him with a rifle that night or at any time.  Instead,

she claimed that he told her that he had one and that she was

16

sitting on it in the car at one point.  This somehow would lead to questioning the inconsistency and meant that her other statements should be given less credence.  Mr. Hobbs next claims that the affidavit should have included the "fact" that the television belonged to him rather than to Ms. Foreman.  It remains far from clear that it was still his television, and, regardless, to retrieve it by force with the use of a firearm would still be alarming.  Mr. Hobbs also asserts that the affidavit misrepresented the manner in which he entered Ms. Foreman's residence, claiming that Ms. Foreman opened the door and he did not force entry.

He then claims that the affidavit included information not provided by Ms. Foreman, namely that the firearm was a "semi-automatic."  He says that that term was not used by Ms. Foreman, indicating that her description was too vague to be credited.

Including the other details of Ms. Foreman's statements would not have undermined the probable cause showing, and there is no showing of any reckless or deliberate disregard for the truth. Ms. Foreman reported a violent and alarming action by Mr. Hobbs, who admits that he broke the kitchen window and demanded return of the television.  Thus, there was both no error by counsel in failing to file a further suppression motion and there was no prejudice.

Similarly, the failure to challenge the affidavit for the search warrant for the residence was neither error nor prejudicial. The affidavit was not false simply because the affiant relied on information obtained from others. It did describe Mr. Hobbs as "dropping" the handgun when the evidence later showed that a gun was recovered on the ground between the driver-side door and the curb after he was arrested. Even if the statement that he "dropped" the gun were replaced by a statement that the gun was recovered on the ground where he had been, there was ample probable cause for the warrant. Thus, the misstatement was immaterial. Moreover, the only evidence introduced at trial from the execution of that warrant was the box of ammunition of the same caliber as that found in the handgun. There was other, more direct, evidence of his handgun (loaded with ammunition) possession from the testimony of the officers on the scene of his arrest, corroborated by his recorded jail call. Again, there was no error by counsel, and no prejudice.

**b.    Ms. Foreman's police precinct interview evidence**

Mr. Hobbs asserts that trial counsel failed to contradict Ms. Foreman's testimony with police precinct video footage during trial to weaken her credibility with the jury. Rather, he presented evidence that "missed its mark." In addition, trial

counsel failed to call two government witnesses, Officers Nesbitt and Flanary, who, purportedly, would have contradicted Ms. Foreman's testimony.

Mr. Hobbs asked his attorney to play for the jury the recordings of law enforcement's interviews of Ms. Foreman in an effort to refute her trial testimony that she never stated to police that she saw AK-47s at Mr. Hobbs' home or in his vehicle. Trial counsel was permitted to play a snippet of the interview with Ms. Foreman during the trial but, according to Mr. Hobbs, played an interview that did not discredit her testimony. Mr. Hobbs asserts that Ms. Foreman was the only witness who testified that she had seen him in possession of a firearm and if his trial attorney had discredited her as he had requested, the trial would have had a different outcome.

Mr. Hobbs was found guilty of possession of a firearm and ammunition based on the loaded firearm found when he was arrested. At his arrest, multiple officers saw the loaded firearm in the area where he was standing, and he admitted to possessing the firearm during a recorded jail call on February 16, 2018. Even if trial counsel were able to play more portions of Ms. Foreman's interview that showed some inconsistency, the verdict would have been unaffected.

19

**c. Failure to challenge constructive amendment of the Indictment at trial and during appellate review**

Mr. Hobbs states that the Indictment charged him with possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1) based on the recovery of the Ruger P89 9mm caliber pistol loaded with ammunition. At trial, the government introduced testimony that a box of 9mm ammunition was recovered from his home. Mr. Hobbs asserts that reference to this box of ammunition amounts to an amendment of the Indictment and his attorney offered no challenge either at trial or on appeal.[5] Mr. Hobbs contends that his attorney should have objected that either the charge was duplicitous or that there had been an impermissible constructive amendment. This contention also fails.

The Indictment read:

> On or about February 3, 2018, in the District of Maryland, the defendant, ERICK RAHUMID HOBBS a/k/a ERIC MUHAMMAD, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, to wit: a Ruger P89 9mm caliber pistol with serial number 304-24692, and ammunition, in and affecting interstate commerce.

(ECF No. 1, at 1).

---

[5] Mr. Hobbs retained the services of his trial attorney, Mr. Hoffman, to represent him on his appeal before the Fourth Circuit.

"An indictment is duplicitous if it charges two offenses in one count." *United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017).  Possession of multiple firearms or a firearm loaded with ammunition at one time constitutes a single possession: "[A] defendant violates § 922(g) once when he possesses at one time and place 'any firearm or ammunition,' 18 U.S.C. § 922(g); it does not matter if he has one, two, three, or more firearms." *United States v. Faison*, 840 F.App'x 736, 739 (4th Cir. 2021).  A constructive amendment, on the other hand, is when the basis for a charge is broadened during trial:

> The Fifth Amendment's Grand Jury Clause "guarantees that a criminal defendant will be tried only on the charges in a grand jury indictment," so "only the grand jury may broaden or alter the charges in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (citation and internal quotation marks omitted).  "A constructive amendment to an indictment occurs when either the [G]overnment (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the *possible bases* for conviction beyond those presented by the grand jury." [*United States v.*] *Floresca*, 38 F.3d [706,] 710 [(4th Cir. 1994)] (emphasis added).  As the Supreme Court has explained: "court[s] cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217[] (1960).  Thus, the resulting incongruity between the indictment and the conviction that a constructive amendment causes "destroy[s] the

> defendant's substantial right to be tried only
> on charges presented in [the] indictment."
> *Id*.

*United States v. Simmons*, 11 F.4th 239, 268 (4th Cir. 2021).

Neither circumstance occurred here. Throughout trial, it was clear that the ammunition included in the possession charge was that inside the loaded firearm, and not that found days later in a box in the dresser drawer. Although the concept of constructive possession was discussed regarding the instructions, it was solely in the context of defining possession with regard to the loaded firearm. (ECF No. 83, at 2-8). The date alleged for the possession was February 3, 2018, and not the later date when the residence was searched. Government counsel argued that the box of ammunition was corroborative evidence that the loaded firearm found days earlier had been possessed by Mr. Hobbs. (*Id*. at 43, 68, 70). During deliberations, the jury sent out a note asking "whether the prosecution needs to prove possession of both the firearm and ammunition or just one of the firearm or ammunition." (*Id*. at 76-77). With agreement from the parties, the court told the jury that the answer was "or" as explained in the jury instructions. (*Id*. at 75, 76-77). Thus, the indictment was neither duplicitous nor constructively amended during trial, and trial counsel did not err by failing to object.

22

Mr. Hobbs' appellate counsel challenged the trial court's denial of his motion to suppress evidence obtained after law enforcement secured cell phone location data from his cell phone provider. This was, in the words of the Fourth Circuit, "an issue of first impression." *Hobbs*, 24 F.4th at 970. Mr. Hobbs does not show (and does not even contend) that the issues he alleges that his appellate counsel failed to raise on appeal were "clearly stronger" than the issues presented. Indeed, because the issues had not been raised at trial, review would have been for plain error, a very difficult standard. *United States v. Banks*, 29 F.4th 168, 178-81 (4th Cir. 2022). Thus, Mr. Hobbs fails to overcome the "strong presumption that [his] counsel's conduct was within the wide range of reasonable professional assistance" when he selected the issues to raise on appeal. *United States v. Lomax*, No. 10-cr-0145-WMN, 2014 WL 1340065, at *2 (D. Md. Apr. 2, 2014) (citing *Strickland*, 466 U.S. at 689).

## B.  Motion for the disclosure of grand jury transcripts

Mr. Hobbs requests access to full or limited grand jury transcripts at no cost. (ECF No. 97). He reiterates his argument that the trial court constructively amended the Indictment to include the box of ammunition seized from his home. A petitioner must make a showing of particularized need in order to obtain

23

disclosure. That showing requires demonstration of need, that the need is greater than the secrecy interest, and the request is narrowly structured. *United States v. Moussaoui*, 483 F.3d 220, 235 (4th Cir. 2007) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). There is no need here because the indictment was not duplicitous and the issue of constructive amendment, if the only charge were the loaded firearm, would not turn on what was presented to the grand jury. Mr. Hobbs' motion for grand jury transcripts will be denied.

### C. Motion to modify presentence report

Mr. Hobbs filed a letter in June 2023 requesting the court to modify his presentence report to remove allegedly unfounded allegations that he pointed a firearm and threatened a person with it. (ECF No. 103). He claims that counsel did not review the report adequately prior to the sentencing hearings and that he did not realize the impact this section of the report could have on his security classification. Short of seeking to amend his § 2255 petition, he asks the court to direct an amendment, or addendum, to the report.

Preparation of the presentence report followed normal procedure, with a draft being provided to the parties in advance of any filing with the court. Ultimately, three reports were

24

prepared, the original on April 12, 2019, with revisions on May 14, May 22, and May 29, 2019. (ECF No. 67).  No objections were communicated to the probation officer by any party.  The initial sentencing hearing began on May 24, but was continued until May 30, in order to clarify the status of a prior conviction.  The final revised report was filed in between those hearings.  No transcript of the first sentencing hearing has been made, but the court's normal practice is to ask whether counsel and the defendant have reviewed the final presentence report.  That inquiry likely prompted the discussion of the expungement issue.  Mr. Hobbs obviously was well aware of the contents of the report by the time of sentencing.

The section he objects to now is in the recitation of the offense conduct, and he highlights remarks the court made at sentencing.  The offense conduct that was important to the court was the possession of the loaded firearm, in a car, on a public street.  As stated, "[T]his was no simple felon in possession. This was a dangerous felon in possession because of the mood and the circumstances, the volatility of that situation, exacerbated by the attempt to talk to the victim improperly afterwards." (ECF No. 84, at 38).  It was only in that context that the court said that, for sentencing purposes, the court did not need to resolve

what exact words were spoken, or gestures exchanged.  The firearm was in his hand both to break the kitchen window and while he spoke to the victim in the front of the house.

Had an objection been made, the court, in accord with normal practice, would not have changed the report's language regarding offense conduct, but would have directed an addition: The defendant disputes that he pointed the weapon at the victim.

Mr. Hobbs is advised that there is a formal process for seeking relief through the Bureau of Prison's administrative process.  As one court explained:

> [Bureau of Prisons] Program Statement 5800.11(15)(c) provides that an inmate may challenge the accuracy of information in his central file.  When such a challenge is made, unit team staff must "take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified." P.S. 5800.11(15)(c).  The inmate is required to provide staff with sufficient information to support his challenge.  *Id*.  "When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct." *Id*.  The Program Statement provides an example in the context of a challenge to information in a PSI:
>
>> For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a

written response also be provided. **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the applicable section of the Inmate Central file, and also make a notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

When the USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff should subsequently review, and where indicated, correct Bureau generated reports or data such as the Inmate Load and Security Designation form (BP-337), the Custody Classification form (BP-338), Progress Report, and any other reports that may have been based on the PSI. Bureau reports, data, or SENTRY transactions should be corrected within a reasonable period of time after identification as being inaccurate.

If the information source will provide a corrected document or data, it should be immediately inserted in the file or data base and the inaccurate information or document removed. A notation on the

27

> Inmate Activity Record form should acknowledge the insertion of the corrected information or document.

*Kates v. King*, No. 11-cv-00951, 2011 WL 6937553, at *4 (M.D.Pa. June 3, 2011), *report and recommendation adopted by*, 2012 WL 10667 (M.D.Pa. Jan. 3, 2012), *aff'd*, 487 F.App'x 704 (3d Cir. 2012). This court will not direct any change in the report.

### D. Motion for a transcript of the oral argument before the Fourth Circuit

Mr. Hobbs requests a transcript of the oral argument before the Fourth Circuit at no cost to support his contention that his attorney admitted that he erred at trial "with regard to the 'box of ammunition' introduced by the government and his failure to challenge the constructive amendment and duplicitousness of the Indictment." (ECF No. 104). Because the court did not amend the Indictment as discussed herein, Mr. Hobbs' motion will be denied as moot. In any event, oral argument audio is publicly available for streaming and download at no cost from the Fourth Circuit website.[6]

---

[6] *See Listen to Oral Arguments*, U.S. Court of Appeals for the Fourth Circuit, https://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments; https://www.ca4.uscourts.gov/OAarchive/mp3/19-4419-20211209.mp3.

**E.    Motion for *in forma pauperis* status**

Mr. Hobbs filed a motion requesting permission to proceed *in forma pauperis*. (ECF No. 105). The government opposes the motion arguing that there is no need for *in forma pauperis* status because 1) audio of oral argument before the Fourth Circuit is available at no charge, and 2) there are no costs associated with filing a § 2255 motion. (ECF No. 106). The court agrees, and Mr. Hobbs' motion to proceed *in forma pauperis* will be denied as moot.

**F.    Motion to supplement § 2255 motion**

Mr. Hobbs filed a motion to supplement in June 2024 asserting that he no longer qualifies as an Armed Career Criminal. (ECF No. 107). He states that his conviction for attempted second-degree murder no longer qualifies as a violent felony under § 924(e)(2)(B)(i) because the mens rea necessary is not more than recklessness. In support, he cites to a series of cases beginning with *Borden v. United States*, 593 U.S. 420 (2021), followed by *United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022), *United States v. Gill*, 652 F.Supp.3d 567 (D. Md. 2023), and *United States v. Ortiz-Orellana*, 90 F.4th 689 (4th Cir. 2024). He asserts that the court must apply the modified categorical approach to assess a divisible state crime. The Government does not oppose

supplementation.[7]  It argues, however, that Mr. Hobbs is wrong to assert that his prior Maryland conviction for attempted murder no longer qualifies as a crime of violence.

In *Borden*, the question was whether a criminal offense can count as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), so as to trigger a mandatory minimum, if the underlying predicate offense on which that enhancement is based requires only a mens rea of recklessness.  Specifically, the issue was whether a Tennessee conviction for aggravated assault, which can be committed recklessly, has as an element the use of physical force against the person of another.

The Court reversed the judgment but did not issue a majority opinion.  The plurality opinion, authored by Justice Kagan for the four-Justice plurality, found that mere recklessness did not suffice to constitute a "violent felony"[8]: "The phrase 'against

---

[7]  Although the Government opposes the argument within the supplement, it does not oppose the filing of the supplement.  Thus, permission to file the supplement will be granted.

[8]  Justice Thomas wrote a sole concurrence that found that the "particular provision at issue here does not encompass petitioner's conviction for reckless aggravated assault."  He declared he was doing so, however, solely to avoid "committing a new [error]," even though the "consequences" of the court's ultimate decision was "at odds with the larger statutory scheme." *Borden*, 593 U.S. at 445 (Thomas, J., concurring in the judgment). He would focus on the "use of physical force" portion of the statute, rather than the "against the person of another" phrase.

another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." *Borden*, 593 U.S. at 429 (plurality opinion). Specifically, Justice Kagan reasoned that modern criminal statutes require one of four basic types of mental states "in descending order of culpability: purpose, knowledge, recklessness, and negligence." *Id.* at 426. In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court had found that purely negligent conduct did not evince a culpable enough state of mind to satisfy the definition of "crime of violence" under 18 U.S.C. § 16(a), "a statutory definition relevantly identical to ACCA's elements clause." *Id.* at 427. The plurality declared that it was expressly taking up the question the Court had "reserved" in *Leocal* and *Voisine v. United States*, 579 U.S. 686 (2016) (finding reckless domestic assault qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9)). *Id.* at 429.

Acts done recklessly, Justice Kagan explained, are done when a person "consciously disregards a substantial and unjustifiable risk" associated with that conduct. *Id.* at 427 (citing Model Penal

---

*Id.* at 446.  Four dissenters would have ruled that the "ACCA's use-of-force clause encompasses reckless offenses." *Id.* at 485 (Kavanaugh, J., dissenting).

Code § 2.02(2)(c); *Voisine*, 579 U.S. at 691).  The ACCA, on the other hand, "set[] out to identify . . . the sort of offender who, when armed, 'might deliberately point the gun and pull the trigger.'"  *Id.* at 438 (quoting *Begay v. United States*, 553 U.S. 137, 145-46 (2008)).  She subsequently identified other laws, such as DUI offenses, that prohibit conduct demonstrating a "degree of callousness toward risk," but noted that "[h]owever blameworthy, the reckless (or negligent) conduct involved in such a crime is 'far removed' from the 'deliberate kind of behavior associated with violent criminal use of firearms.'"  *Id.* at 438-39 (quoting *Begay*, 533 U.S. at 146-47).  There was "no reason" therefore to find that such "reckless offenses . . . precipitate the statute's enhanced sentences."  *Id.* at 439.

Justice Kagan recognized that there may be laws whose mens rea go beyond mere recklessness, by requiring a somewhat more culpable state of mind, such as depraved heart or extreme recklessness, a state of mind just short of, if not akin to, acting knowingly.  The plurality, however, left consideration of those crimes for another day.  *Id.* at 429 n.4.[9]  She did, however,

---

[9] While the dissent vehemently disagreed with the outcome, it seemed to agree that criminal statutes exist on a continuum of culpability, as "the line between knowledge and recklessness can be thin," and one that criminal law "ordinarily does not draw" a line between.  *Id.* at 463 (Kavanaugh, J., dissenting).

highlight potential offenses she felt were clearly on the
"reckless" side of the line; for example, she asked the reader to
"[i]magine" a driver who is "late to work, decides to run a red
light, and hits a pedestrian whom he did not see." That person
"has consciously disregarded a real risk, thus endangering
others," but "has not used force 'against' another person" to be
swept up in the definition of a violent felony under the ACCA.
*Id.* at 432.

Thus, after *Borden*, a crime requiring only recklessness
cannot be a predicate for the ACCA, although the precise reason is
not resolved. Mr. Hobbs contends that his prior conviction for
attempted second-degree murder no longer qualifies. The
subsequent cases he relies on concern the offense of murder, not
attempted murder. He argues specifically that "[a] cursory review
of Mr. Hobbs' state charging documents or plea agreement will
confirm that unlike the defendants in *Jackson*, *Gill*, and *Ortiz-Orellana*, Mr. Hobbs' primary goal in that 9/08/2000 offense was
armed-robbery and not attempted 1st or 2nd degree murder, which has
the element of recklessness." (ECF No. 107 ¶ 19). He concludes
that attempted second-degree murder "cannot qualify as a violent
felony under § 924(e)(2)(B)(i)'s force (or elements) clause
because it 'requires only the mens rea necessary to attempt or

33

complete the underlying felony [i.e., robbery, armed robbery)].'" (*Id.* ¶ 20 (alteration in original) (quoting *Jackson*, 32 F.4th at 285)). Despite the rigor with which Mr. Hobbs pursues this claim, it is misguided.

A court uses the "categorical approach" to determine whether the elements of the offense require the requisite use of force, looking only at the wording of the statute. At that stage, the focus is on the elements of the offense and the minimum conduct necessary to sustain a conviction. If that minimum conduct does not rise to the appropriate level, the offense is not a crime of violence.

Under Maryland law, "[t]he crime of attempt consists of a specific intent to commit a particular offense coupled with some overt act in furtherance of the intent that goes beyond mere preparation." *State v. Earp*, 319 Md. 156, 162 (1990) (collecting cases). For attempted murder, one must have the specific intent to murder, which is not the same as intent to kill. *Id.* at 163. In *Earp*, the court held that an intent to commit grievous bodily harm will not suffice, nor does having a reckless disregard of life. *Id.* at 164–65. That is so, even though those mental states can suffice for a completed murder. A Maryland court shortly later explicitly held: "By parity of reasoning, we have no difficulty in

34

completing the matrix and holding squarely that the *mens rea* of a wanton disregard for human life, which will support a conviction for depraved-heart murder should death result, will not support a conviction for antecedent attempted murder." *Abernathy v. State*, 109 Md.App. 364, 375–76 (1996); *see also Harrison v. State*, 382 Md. 477, 489 (2004) (Under Maryland law, to be convicted of attempted second-degree murder, a person must "harbor[] a specific intent to kill the victim and [have] taken a substantial step toward killing the victim."). For Mr. Hobbs to have been convicted of attempted second-degree murder in 2001, it was established that he had the specific intent to murder and took a substantial step in furtherance. That crime qualifies as a crime of violence and as a predicate for the ACCA finding.

## IV. Conclusion

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is also required to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El*, 537 U.S. at 336-38. Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (citation modified).

Upon review of the record, the court finds that Mr. Hobbs does not satisfy the above standard. Accordingly, the court will decline to issue a certificate of appealability on the issues which have been resolved against him. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
